1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JESSE BOSWORTH, et al.,

Plaintiffs,

v.

CITY OF SAN JOSE, et al.,

Defendants.

Case No. 18-cv-05459-NC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DISMISSING PLAINTIFFS NANCY BOSWORTH AND ELIZABETH CAMPBELL FROM THE CASE**

Re: Dkt. Nos. 71, 72

This case arises out of the San Jose Police Department's warrantless entry into the home of Jesse Bosworth, his mother Nancy Bosworth, and his grandmother Elizabeth Campbell to arrest Jesse. Officers deployed a police dog into the home that bit Jesse while he slept, resulting in injuries requiring hospital treatment. Plaintiffs Jesse Bosworth, Ms. Bosworth, and Ms. Campbell sue defendants the City of San Jose and individual officers for violations of their constitutional rights. The principal issue before the Court on cross-motions for summary judgment is whether the officers are entitled to qualified immunity for both their warrantless entry into the home and for the force used by the dog, Jax.

Defendants move for summary judgment on all of Plaintiffs' claims. Dkt. No. 71. Plaintiffs move for summary judgment on some claims as to one police officer, Jennifer

Clear.  Dkt. No. 71.  The Court FINDS that the officers are entitled to qualified immunity as to their deployment of the dog, but not for the warrantless entry into the home.  The Court DENIES the defendants' motion for summary judgment as to Jesse Bosworth's claims for intentional infliction of emotional distress and violations of California Civil Code § 52.1 (the Bane Act) against the individual officers and the City of San Jose due to genuine factual disputes underlying those claims.

The Court GRANTS the defendants' motion for summary judgment as to the *Monell* claims against the City of San Jose for lack of evidence in the record of the city's policy, practice, or custom.  The Court GRANTS the defendants' motion for summary judgment as to the state law claims brought by Ms. Bosworth and Ms. Campbell based on their failure to file a government claim and therefore DISMISSES them from the case. The Court DENIES the plaintiffs' motion for partial summary judgment in its entirety because genuine disputes of material fact exist as to all claims challenged in that motion.

## I.    BACKGROUND

### A.    Undisputed Facts

#### 1.    The Investigation

On August 10, 2017, San Jose police officers responded to a reported robbery and assault outside a Panda Express in West San Jose.  Dkt. No. 71, Att. 2, Declaration of Officer Clear at ¶ 3; Dkt. No. 71, Ex. 11.  A man had thrown a woman on the ground, pinned her arm behind her back, and left with her purse, $170 in cash, and her cell phone. Clear Decl. ¶¶ 5–7; Dkt. No. 71, Exs. 4 and 5.  A witness who was inside the Panda Express described the incident to Officers Jennifer Clear and Richard Harrison, and the woman who had been robbed identified the man who had robbed her as "Jesse Boz."  *Id*. After Officer Clear showed the woman a photo of Jesse Bosworth, she confirmed that he was the man who had robbed her.  *Id*.

San Jose police officers were already familiar with Jesse Bosworth: a month earlier, he was arrested for robbery and resisted arrest.  Clear Decl. ¶ 9; Dkt. No. 71, Ex. 20 at 36:25–38:17.  Two officers from this case, Officers Clear and Rolando Segura, were

involved in that prior arrest. Clear Decl. ¶ 9.

Officer Clear investigated Jesse Bosworth's whereabouts and learned that he lived with his mother, Nancy Bosworth, and grandmother, Elizabeth Campbell. *Id*. at ¶¶ 10–11. Officer Clear learned that Ms. Bosworth and Ms. Campbell had a restraining order against Jesse issued in June of that year based on reported domestic disputes, which had recently been modified to allow Bosworth to have "peaceful contact" with his mother and grandmother. *Id*. Officer Clear made a plan to arrest Bosworth. Ex. 16 at 55:19–56:11. She did not obtain a search warrant or an arrest warrant. *Id*.

Officer Clear assembled Officers Harrison, Segura, Mario Tatom, Topui Fonua, and Erin Arana, as well as other SJPD resources, at a City maintenance yard near the Bosworth home. Clear Decl. ¶ 15; Ex. 16 at 37:11–38:13. They planned to station officers around the perimeter of the property in case Jesse tried to escape, to bring stun bags, and to have a police dog ready if needed. *Id*. at ¶ 16; Ex. 19 at 30:2–12. The police proceeded to the Bosworth home and arrived around 10:00 p.m. Sergeant Robert Finnie, Officer Clear's supervisor, met them at the house. Ex. 17 at 6:19–7:14.

### 2. The Entry

Video and audio footage from multiple officers' body-worn cameras depicts the events that took place at the Bosworth home and are in the court record. First, Officer Clear called the house by phone and spoke with Ms. Bosworth, who told her that Jesse was at home. Dkt. No. 71, Ex. 6 at 2:50–4:08. Officer Clear asked if Ms. Bosworth and Ms. Campbell were safe, and then said, "Would you guys mind stepping out of the house so that we can see that you're safe? And then we're going to need to speak with him." *Id*. Ms. Bosworth exited the house, and Officer Segura asked her, "Can she come out also? You can stay here, can you just let her know to come out?" Dkt. No. 72, Ex. J, 2:15. Ms. Bosworth called to Ms. Campbell, "Mom, they need you to come out." *Id*. Ms. Campbell exited the home as Officer Segura said, "Come on, come on, ma'am, come on over here." *Id*. By this time, officers had secured the perimeter of the home. Dkt. No. 72, Ex. 6 at 20:8–20.

The women stood in the driveway, Ms. Campbell barefoot. Dkt. No. 71, Ex. 6, at 6:15–7:50. They had a conversation with Officers Clear and Segura about their dog, who was in the house; the women re-entered to put their dog in the bathroom with the door closed. Dkt. No. 71, Ex. 8, at 2:10. Back in the driveway, the following conversation ensued[1]:

> Officer Clear: Can you tell me where his room is and do you mind if we go in there?
>
> Ms. Bosworth: It's just right in the door—you make your right at the hallway, it's the first door on the left.
>
> Officer Clear: Make a right and it's the first door on the left? Okay. Do you mind if we go in there?
>
> Officer Segura: Nobody else is in the house?
>
> Ms. Bosworth: Nobody else is in the house.
>
> > Ms. Campbell, at the same time: No.
>
> Ms. Bosworth: Our German Shepherd is locked in the bathroom, which is directly across from his room—
>
> > Ms. Campbell, at the same time: Yeah, that's on the right, when you go down the hall it's on the right.
>
> Ms. Bosworth: —so make sure you go to the left.
>
> > Officer Segura, at the same time: The reason we are here is he is wanted for a robbery—
>
> Ms. Bosworth: What?
>
> Officer Segura: —your son. So we need to talk to him.
>
> Ms. Bosworth: Okay, he's in his room, to the left, yes, not the right, that's where our dog is.
>
> Ms. Campbell: You want me to show you which one?
>
> Officer Segura: No, no, no.

---

[1] The Court created this transcription based on the officers' bodyworn camera footage, which was filed by both parties as exhibits to the cross-motions for summary judgment. Defendants filed Exhibits 4–10 to the Declaration of Keith Neumer via thumb drive at Dkt. No. 71, Att. 9, and Plaintiffs filed Exhibits B, I, J, and K via CD at Dkt. No. 72, Att. 2. Neither party disputes the accuracy or authenticity of any of the videos, and the videos filed by both sides largely overlap.

Ms. Bosworth: Okay, you make a right turn, go down the hall, on the left, he's in there.

Officer Clear: He's awake?

Ms. Bosworth: Mm-hmm.

Officer Clear: Okay, does he know we're here?

Ms. Bosworth: I believe so.

Officer Clear: Okay, does he have any weapons?

Ms. Bosworth: No.

Officer Clear then attempted twice to call Jesse's cell phone to ask him to come out, but he did not answer. *Id*. at 7:40–9:40. Meanwhile, a police helicopter circled overhead. *Id*. Ms. Bosworth asked whether she could go inside to ask Jesse to come out, stating, "I just don't want anything to happen to our dog." *Id*. at 10:10–25. The officers declined.

Multiple officers approached the front door. Officer Segura shouted to Jesse at least seven times over a total of two minutes, instructing him to come out of the house. *Id*. at 10:30. There was no response. *Id*. Officer Tatom then gave three announcements that he intended to release a police dog into the house, and that the dog would bite Jesse if it found him. *Id*. at 12:25. There was no response. *Id*. Officer Tatom released the dog, Jax, off his leash and into the house. *Id*. at 12:30. As he did so, Officer Tatom gave Jax a command to find a person and, if he could, to bite the person and hold until commanded to release. Dkt. No. 71, Ex. 1, Declaration of Mario Tatom at ¶ 10.

### 3. The Police Dog Deployment and Arrest

Seconds later, officers heard growling and yelling, and went inside. Dkt. No. 71, Ex. 9, at 12:5. Multiple officers entered the home and performed protective sweeps of the rooms while Officer Tatom called out to Jesse to ask whether he gave up. *Id*. at 12:30. Jesse said that he gave up. *Id*. Officer Tatom gave Jax a command to let go of Jesse. *Id*. About ten to fifteen seconds passed from Jax's deployment before Officer Tatom called him off. Ex. 6 at 14:44. Officers found Jesse's bedroom door closed, opened it, and Jax exited. *Id*. They instructed Jesse to crawl out of the room on his hands and knees, warning

5

that if he did not, they would send the dog back in. *Id.* at 15:25. Jesse responded that he didn't want to get blood on the carpet. *Id.* at 15:35–45. Jesse crawled into the hallway, bleeding from his arm and leg and onto his back and hands, and was handcuffed while lying prostrate on the carpet, repeating, "I was sleeping." *Id.* at 15:45–17:05.

Officer Clear led Jesse to the sidewalk and called for medical attention. *Id.* at 18:00. She then returned to Ms. Bosworth and Ms. Campbell in the driveway and described items the officers sought to search for in Jesse's room, including the purse and $170 cash and cell phone stolen from the woman near the Panda Express earlier that evening. *Id.* at 18:30–19:00. Officer Clear asked to search Jesse's room and Ms. Bosworth and Ms. Campbell responded "Yeah," and "Sure," respectively. *Id.* Officers searched Jesse's room and found those items. Dkt. No. 72, Ex. 10, at 16:50, 28:00.

## B. Procedural History

Jesse Bosworth, his mother Nancy Bosworth, and his grandmother Elizabeth Campbell filed this case in September 2018 against defendants the City of San Jose and San Jose Police Department Officers Jennifer Clear, Robert Finnie, Mario Tatom, Juan Ceballos, Rolando Segura, Erin Arana, Topui Fonua, and Richard Harrison. Dkt. No. 1. Jesse Bosworth brings claims for excessive use of force under 42 U.S.C. § 1983 against Officers Clear, Finnie, Tatom, Segura, and Harrison, and against the City of San Jose. Dkt. No. 1.[2] All three plaintiffs bring claims against all defendants for intentional infliction of emotional distress and for violations of California's Bane Act. *Id.*; Cal. Civ. Code § 52.1.

The parties filed cross-motions for summary judgment. Dkt. Nos. 71, 72. The Court has considered these motions, the attached evidence, oppositions, and reply briefs in deciding this Order. Dkt. Nos. 73, 74, 75, 77, 78. All parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 6, 17.

---

[2] The parties stipulated to a voluntary dismissal of Officer Juan Ceballos. Dkt. Nos. 36, 37.

## II.  LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact.  Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  Bald assertions that genuine issues of material fact exist are insufficient.  *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial.  Fed. R. Civ. P. 56(c); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)).  All justifiable inferences, however, must be drawn in the light most favorable to the nonmoving party.  *Tolan*, 134 S. Ct. at 1863 (citing *Liberty Lobby*, 477 U.S. at 255).

At summary judgment, where there is videotape evidence of the incident in question, the Court must view "the facts in the light depicted by the videotape."  *Scott v. Harris*, 550 U.S. 372, 381 (2007).  However, "the mere existence of video footage of the incident does not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that footage."  *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018), cert. denied, 139 S. Ct. 2613 (2019).

At summary judgment, the Court may find that officials are shielded from liability under the doctrine of qualified immunity so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known. *Mullenix v. Luna*, 136 S. Ct. 305, 208 (2015) (per curiam).

## III. DISCUSSION

Defendants and plaintiffs both move for summary judgment over some or all of plaintiffs' claims. Dkt. Nos. 71, 72. This Order addresses each motion for summary judgment in turn.

### A. Defendants' Motion for Summary Judgment

From the outset, the Court notes that the Complaint at Dkt. No. 1 brings its 42 U.S.C. § 1983 claims only on behalf of Jesse Bosworth and not on behalf of his mother, Ms. Bosworth, or grandmother, Ms. Campbell. Ms. Bosworth and Ms. Campbell bring only state law claims for intentional infliction of emotional distress and for violations of the Bane Act. Dkt. No. 1 at 13–17.

#### 1. Jesse Bosworth's 42 U.S.C. § 1983 Claim Against the Individual Officers

Defendants first move for summary judgment as to Jesse Bosworth's excessive force claim against the individual officer defendants. Dkt. No. 71. The Court interprets Jesse Bosworth's § 1983 claim to be premised on both the officers' warrantless entry into his home and on the allegedly excessive force rendered by dog Jax. The operative complaint, in describing this claim, reads: "Defendants acted under color of law *by unlawfully entering* Jesse Bosworth's home *to subject him to excessive force* thereby depriving him of his constitutionally protected rights." Dkt. No. 1 at ¶ 83 (emphasis added). The Court discusses the warrantless entry and police dog deployment separately.

##### a. Warrantless Entry

The Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. U.S. Const., amen. IV. A search without a warrant is presumptively unconstitutional. *Payton v. New York*, 445 U.S. 573, 586 (1980). Here, the parties do not dispute that officers entered the Bosworth home to arrest Jesse without a search or arrest warrant.

###### i. Qualified Immunity

Qualified immunity shields officials from civil liability as long as their conduct

does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix*, 136 S. Ct. at 308. In determining whether an officer is entitled to qualified immunity, the Court asks two questions (in whatever order it chooses): (1) whether the alleged misconduct violated a constitutional right, and (2) whether the right was clearly established at the time of the alleged misconduct. *Hernandez v. City of San Jose,* 897 F.3d 1125, 1132 (9th Cir. 2018) (quoting *Maxwell v. County of San Diego*, 708 F. 3d 1075, 1082 (9th Cir. 2013); *see also Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the answer to either question is "no," then the officer is entitled to qualified immunity. *Pearson*, 555 U.S. at 232. The Court's analysis "must be undertaken in light of the specific context of the case." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Qualified immunity applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (quoting *Butz v. Economou*, 438 U.S. 478, 407 (1978)).

### 1. Constitutional Violation

The Court first addresses whether the officers violated Jesse Bosworth's constitutional rights. With regard to the warrantless entry into the Bosworth home, this question depends on whether the officers violated the Fourth Amendment by entering the residence without a warrant.[3]

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton*, 445 U.S. at 586. "This special protection of the home as the center of the private lives of our people reflects an ardent belief in the ancient adage that a man's house is his castle to the point that the

---

[3] Defendants put forth two theories to justify their warrantless entry: (1) consent, and (2) Officer Clear's belief that Jesse was subject to a search condition. Defendants do not argue that any other exception to the warrant requirement, such as exigent circumstances or emergency, apply here. Indeed, the officers here knew that Ms. Bosworth and Ms. Campbell were safely outside the home, that the victim of Jesse Bosworth's alleged crime from hours earlier was not present, and that Ms. Bosworth had told them that Jesse had no weapons. These same circumstances highlight the plaintiffs' criticism of the officers' decision to proceed without a warrant.

poorest man may in his cottage bid defiance to all forces of the Crown." *Bonivert v. City of Clarkston*, 883 F.3d 865, 873 (9th Cir. 2018) (internal quotations omitted) (citing *Randolph*, 547 U.S. at 115).

Searches without warrants are unlawful because "the Constitution requires that the deliberate, impartial judgment of a judicial officer be interposed between the citizen and the police . . . [o]ver and again [the Supreme Court] has emphasized that the mandate of the Fourth Amendment requires adherence to judicial processes, and that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (internal citations omitted). These exceptions include "emergency, exigency, or consent." *Espinosa v. City & Cty. of S.F.*, 598 F.3d 528, 533 (9th Cir. 2019). "Defendants bear the burden of proving that their warrantless entry falls within an exception to the warrant requirement." *Herrera v. City of Fremont*, Case No. 18-cv-02843-JSC, 2019 WL 5963231, at *2 (N.D. Cal. Nov. 13, 2019).

One exception to the warrant requirement is the consent of an authorized occupant. *Georgia v. Randolph*, 547 U.S. 103, 106 (2006) (holding that "the Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant."). "As with other factual determinations bearing upon search and seizure, determination of consent to enter must be judged against an objective standard." *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990) (internal quotations omitted) (citing *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)). "The existence of consent to a search is not lightly to be inferred." *United States v. Patacchia*, 602 F.2d 218, 219 (9th Cir. 1979). Therefore, "the government always bears the burden of proof to establish the existence of effective consent." *United States v. Shaibu*, 902 F.2d 1423, 1426 (9th Cir. 1990) (internal quotations omitted). "That burden is heaviest when consent would be inferred to enter and search a home, " and "[j]udicial concern to protect the

sanctity of the home is so elevated that free and voluntary consent cannot be found by a showing of mere acquiescence to a claim of lawful authority." *Id*. The Ninth Circuit has established that the government bears the burden to show that "consent was given," that "there was no duress or coercion, express or implied, and that "[t]he consent must be 'unequivocal and specific' and 'freely and intelligently given." *United States v. Page*, 302 F.2d 81, 84–84 (9th Cir. 1962) (internal quotations omitted). "Courts indulge every reasonable presumption against waiver of fundamental constitutional rights . . . [c]oercion is implicit in situations where consent is obtained under color of the badge, and the government must show that there is no coercion in fact." *Id*.

The consent that Defendants rely upon to justify their entry into the Bosworth home is predicated on many disputed facts. First, the parties each interpret differently the video footage from officers' body-worn cameras depicting the officers' interactions with Ms. Bosworth and Ms. Campbell outside their home. Defendants argue that Ms. Bosworth and Ms. Campbell appear cooperative in terms of their tone and demeanor, and point to the women directing officers to Jesse's bedroom to show their consent to enter. On the other hand, Plaintiffs argue that the women were more concerned about preventing the officers from entering the wrong room, thereby endangering their dog, than with consenting to entry. Plaintiffs view Ms. Bosworth's and Ms. Campbell's instructions on how to find Jesse's room as their effort to keep their dog safe rather than as affirmative permission to enter the house.

Moreover, Plaintiffs question whether Ms. Bosworth and Ms. Campbell were even capable of giving full consent under the circumstances: ordered out of their home on a dark, cold night with no shoes or jackets, surrounded by officers including a dog unit, a helicopter, and multiple patrol vehicles, and then told not to go back inside. The Court agrees with Plaintiffs that there exists a genuine dispute of material fact as to whether the women voluntarily consented, or even *could* have voluntarily consented under the circumstances, to the warrantless entry. Finally, the Court finds that there is an additional question of fact as to whether Ms. Bosworth and Ms. Campbell had the authority to

consent to the entry into Jesse's room, even if they did consent to entry of the house.

In sum, the Court finds that, viewing the facts in the light most favorable to the plaintiffs, the defendants have failed to meet their burden to establish the existence of effective consent. *Shaibu*, 902 F.3d at 1426. The defendants have not shown that there was no duress or coercion, and that Ms. Bosworth's and Ms. Campbell's consent was unequivocal, specific, and freely and intelligently given. *Page*, 302 F.2d at 84–84.

Next, Defendants argue that their warrantless entry was justified by Officer Clear's mistaken but genuine belief that Jesse was subject to a search condition, so no warrant was needed. Officer Clear states that, sometime after the reports of the robbery at the Panda Express but before the arrest at the Bosworth home, she phoned a jail where she knew Jesse had recently been incarcerated. Clear Decl. ¶ 13. On the call, she was transferred to multiple jail staff members before one eventually told her that Jesse was on supervised release with a search condition. *Id.* Officer Clear does not know the identity or the position of the jail staff person with whom she spoke. *Id.*

As a matter of fact, however, Jesse was not subject to any search condition: both testimony from Jesse's pretrial supervision officer and a copy of his documented release conditions confirm that Jesse was not subject to warrantless searches. Dkt. No. 78, Ex. BBB, Anh Nguyen Depo. at 9:3–14:12; Dkt. No. 72, Ex. C. Defendants argue that qualified immunity should apply because Officer Clear behaved reasonably, even though her decisions were based on a mistaken fact. Dkt. No. 71 at 22. Plaintiffs, on the other hand, argue that the phone call to the jail never happened. Dkt. No. 75 at 10–11. Their evidence to support this contention is the fact that the information provided on the supposed call turned out to be inaccurate. *Id.* Given that the information provide on the supposed call was inaccurate, in context of the lack of detail about the call such as the name of the person providing the information, the Court finds that the plaintiffs have established a genuine dispute as to the fact of whether the phone call occurred.

If the call occurred, Officer Clear's genuine but mistaken belief still must be reasonable. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Even if it was a genuine

belief, a jury could find that relying upon information provided by an anonymous staff person at a jail—rather than, say, Jesse's pretrial supervision officer or a documentary record of his release conditions—was not reasonable under the circumstances.

Defendants have thus failed to provide any justification as a matter of law for their warrantless entry into the Bosworth home. They do not argue that any exigent circumstances existed. They have not shown that no dispute of fact exists as to the consent of Ms. Bosworth and Ms. Campbell. They have not shown that no dispute of fact exists as to the reasonableness of Officer Clear's mistaken belief about the search condition.

In sum, the Court finds that there is a genuine dispute of material fact as to whether the warrantless entry into the home was a constitutional violation.

### 2. Clearly Established Right

The Court next asks whether the alleged constitutional right was clearly established at the time of the alleged misconduct. The officers would be entitled to qualified immunity if their conduct did not "violate[] a statutory or constitutional right that was clearly established at that time." *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015). A right is "clearly established" if a court can "identify a case where an officer acting under similar circumstances . . . was held to have violated" the Constitution. *White v. Pauly*, 137 S. Ct. 548, 552 (2017). The case need not be "directly on point for a right to be clearly established," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

The Court defines "similar circumstances" here based on the facts viewed in the light most favorable to the plaintiffs. *Tolan*, 134 S. Ct. at 1863. That is, the Court assumes that, in their conversation with officers outside their home, Ms. Bosworth and Ms. Campbell did not consent to entry into the home. That the conversation occurred is undisputed; the inferences to draw from the conversation are in dispute. The Court adopts the plaintiffs' inferences (that Ms. Bosworth and Ms. Campbell lacked capacity to give voluntary consent, and that their only intention was to protect their dog) in determining what clearly established constitutional rights were allegedly violated. The Court further

13

assumes that Officer Clear did not have a reasonable belief that Jesse was subject to a search condition, based on Plaintiffs' facts where the phone call to the jail did not occur. The facts that remain are that the officers entered the Bosworth home with no warrant and under no exception to the warrant requirement.

Here, the Court finds that Jesse Bosworth's constitutional right to be free from a warrantless search of his home was clearly established at the time of the alleged misconduct. "It has long been recognized that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Bonivert*, 883 F.3d at 873. The Supreme Court has long held that warrantless entry into a home is presumptively unreasonable. *See Payton v. New York*, 445 U.S. 573, 586 (1980); *see also Katz v. United States*, 389 U.S. 347, 357 (1967). California state law also makes this clear. *See, e.g., People v. Ramey,* 16 Cal. 3d 263, 275–76 (1976) (holding that "the protection of article I, section 13, of the California Constitution and the Fourth Amendment of the federal Constitution against violation of the right of the people to be secure in their persons and houses against unreasonable seizures applies to arrests within the home, and that warrantless arrests within the home are per se unreasonable in the absence of exigent circumstances.").

The officers were undoubtedly aware of this constitutional right. "Among constitutional rules, few are as well established, frequently applied, and familiar to police officers as the warrant requirement and its exceptions." *Id*. Like in *Bonivert*, where police entered a home after reports of domestic violence despite the suspect's explicit refusal of consent when the alleged victims were safely outside the house and no one was in danger, "[t]his is not a case involving such an undeveloped state of the law that qualified immunity is necessary to protect the officers . . . [r]ather, it is one demanding knowledge of . . . basic, unquestioned constitutional rights." *Id*. (internal quotations omitted) (citing *Wilson v. Layne*, 526 U.S. 603, 617–18 (1999) and *Wood v. Strickland*, 420 U.S. 308, 322 (1975)).

The Court FINDS that individual officers are not entitled to qualified immunity for their warrantless entry into the Bosworth home at this stage of the case.

### i. *Heck* Bar

Defendants argue that Jesse Bosworth's challenge to the warrantless entry should fail as a matter of law because it is barred under *Heck v. Humphrey*. 514 U.S. 477 (1994). Under *Heck*, the Court must dismiss a claim challenging a search, seizure, or arrest that led to a later criminal conviction if "a judgment in favor of the plaintiff would *necessarily* imply the invalidity of his conviction." *Id*. at 486 (emphasis added). Here, Defendants argue that if this Court found its entry into the Bosworth home was illegal, the fruits of that entry—the search that led to the purse, $170, and cell phone—would be inadmissible and Jesse's later guilty plea to the robbery and assault would be undermined. However, the Court finds that whether the warrantless entry was lawful does not "necessarily" render Jesse's conviction "invalid" as required under *Heck*. The items found in the search of Jesse's room could have other grounds for admissibility; further, those items were not the only evidence to connect Jesse to the assault and robbery. In fact, the victim identified Jesse personally because the two were friends, and Jesse later confessed. The Court finds that *Heck* does not bar Jesse's challenge to the warrantless entry in this case.

### b. Police Dog Deployment

### i. Qualified Immunity

Defendants argue that the individual officers are entitled to qualified immunity as to the allegedly excessive force of the police dog deployment. As with the warrantless entry above, the Court first discusses whether there was a constitutional violation and then whether the violation was of a right that was clearly established at the time of the alleged misconduct.

### 1. Constitutional Violation

Force used by law enforcement is permitted if it is "objectively reasonable." *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). In evaluating the objective reasonableness of force used, the Court may consider factors including, but not limited to: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect actively resisted arrest or

attempted to escape. *S.B. v. County of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017). The most important of these factors is whether the suspect posed an immediate threat to the safety of the officers or others. *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc). The Court must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). In short, the Court must "balance the amount of force applied against the need for that force." *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003). "This determination is normally a question for the jury because it requires resolution of disputed questions of fact and determinations of credibility, as well as on the drawing of inferences." *Herrera*, 2019 WL 5963231, at *8 (quoting *Santos v. Gates*, 287 F.3d 846, 852 (9th Cir. 2002). "Excessive force claims typically boil down to an evaluation of the various accounts of the same events . . . thus, the circumstances surrounding those events may be critical to a jury's determination of where the truth lie." *Santos*, 287 F.3d at 852.

According to plaintiffs, Jax bit Jesse on both the arm and the leg. Jax is trained to bite a person and hold that bite until called off by his handler. Tatom Decl. at ¶ 5. Here, that bite lasted ten to fifteen seconds. Dkt. No. 71, Ex. 6, at 14:44. Body-worn camera footage shows Jesse bleeding onto his arm, hands, and back. *Id.* at 15:45–17:05. Jesse was taken to the hospital and treated for the bite wound, which resulted in a two-inch scar on his outer forearm and a corresponding ¼-inch scar on his inner forearm. Dkt. No. 71, Ex. 12 at 36:4–17, 38:8–25, 39:10–40:1, 42:12–43:25.

Viewing the facts in the light most favorable to the plaintiffs, there are questions of fact as to whether the force was objectively reasonable. The most important factor is whether Jesse posed an immediate threat to the officers or others. He did not. All parties agree that no person was left inside the house with Jesse at the time that Jax was deployed. Defendants contend that Jesse had exhibited violence towards officers in the past, but no facts show that from within the residence he was an *immediate* threat to any law enforcement officer. The fact that Jesse was nonresponsive from within the house does not

indicate that he posed a threat to anyone; rather, as Plaintiffs argue, he may have simply been asleep. Indeed, the body-worn camera footage of Jesse's arrest shows him repeatedly stating that he had been sleeping when Jax entered his room and bit him. Dkt. No. 71, Ex. 6, at 15:45–17:05. The footage also shows the officers asking Ms. Bosworth and Ms. Campbell if Jesse has any weapons, to which Ms. Bosworth replied, "no." *Id*. at 7:18. Under these facts, Jesse was not an immediate threat. The Court draws a similar conclusion as to the factor of whether Jesse was actively resisting arrest or trying to escape. Though the officers believed Jesse might be resisting arrest—particularly based on his history—he was, instead, asleep.

The Court finds that, under the facts viewed in the light most favorable to the plaintiffs, a jury could find that the force was excessive under the Fourth Amendment and that a constitutional violation occurred.

### 2. Clearly Established Right

The Court next considers whether the alleged misconduct violated a right that was clearly established at the time. Defendants provide two Ninth Circuit cases to show that it did not.[4] First, in *Lowry v. City of San Diego*, police deployed a dog into an office building at night after an alarm was triggered, expecting to find a burglar in the building. 858 F.3d 1248 (9th Cir. 2017). Instead, the dog found an employee of the business, who had accidentally triggered the alarm, sleeping on a couch; the dog bit her face and injured her lip. *Id*. Second, in *Miller v. Clark Cty.*, officers deployed a dog to seize a suspect who was fleeing police on foot through the woods. 340 F.3d 959 (9th Cir. 2003). In both cases, officers had reason to suspect a person had committed a crime but were unable to visually locate the individual. In both cases, officers believed that deploying a dog was necessary to ensure their own safety given that the suspects may have been armed or resisting arrest. In both cases, officers called off the dog as soon as practically possible

---

[4] In contrast, Plaintiffs have provided no case law about dog deployment. The Court's review of recent caselaw describing dog deployment uncovered no more recent or more relevant cases than the two cited by Defendants.

once the suspects had been seized.  In both cases, plaintiffs' challenges to the dog deployment as excessive force failed.

Similarly, here, officers had reason to believe that Jesse Bosworth was intentionally hiding in the house to resist arrest.  They had probable cause to believe he had committed an assault and robbery, and knew of his mother's and grandmother's restraining order against him.  They also knew of his history of non-compliance with officer commands: Bosworth had been combative with officers a month prior, such that they used pepper spray, a wrap restraint, and a spit mask to subdue and arrest him.  Clear Decl. ¶ 9. Defendants argue that their use of Jax was in line with the dog deployments in *Lowry* and *Miller*.  The Court largely agrees.  The major difference between the circumstances here and those in *Lowry* and *Miller* is that, here, officers deployed Jax into a home without a warrant.  The Court has addressed the warrantless entry above.  Aside from the warrantless entry, based on *Lowry* and *Miller*, the Court FINDS that it was not clearly established at the time of this incident that officers could not deploy a dog under the circumstances here. *White*, 137 S. Ct. at 552.  As such, the individual officers are entitled to qualified immunity for their deployment of the dog.

### 2. Jesse Bosworth's 42 U.S.C. § 1983 Claim Against the City of San Jose

Under *Monell*, Jesse Bosworth must show that a policy, custom, or practice of the San Jose Police Department or the City of San Jose was the moving force behind the alleged constitutional violation.  *Monell v. Dep't of Soc. Srvs.*, 436 U.S. 658, 694 (1978). To establish a policy, custom, or practice, Bosworth must show (1) an unconstitutional custom or policy behind the violation; (2) a deliberately indifferent omission, such as a failure to train; or (3) a final policy-maker's involvement in, or ratification of, the unconstitutional decision or action and the basis for it.  *See Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010) (overruled on other grounds by *Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016)).

Here, Plaintiffs have put forward no evidence about the City of San Jose's policies, customs, or practices.  In their briefing on these motions, Plaintiffs point to the allegations

in their complaint to explain their *Monell* theory. Dkt. No. 74 at 20. These allegations are not evidence. *Barthelemy*, 897 F.2d at 1004. The only evidence in the record that Plaintiffs cite is Officer Clear's answer to one of their Requests for Admission, where Officer Clear stated that her conduct "was consistent with policies of the San Jose Police Department." Dkt. No. 74, Ex. AA, Response Nos. 58, 62. This does not show what the department's policies actually were. *Hornsby v. Cty. of Tulare*, 2016 WL 2854361, at \*14 (E.D. Cal. May 16, 2016) (stating that an officer's description of his conduct as "consistent with" department policy "falls short of establishing" a factual dispute for a *Monell* claim.). In the absence of any such evidence, the Court GRANTS summary judgment to the defendants on the § 1983 constitutional claim against the City of San Jose.

### 3. Plaintiffs' State Law Claims

#### a. The California Government Claims Act

Jesse Bosworth, Nancy Bosworth, and Elizabeth Campbell bring California state law claims against all defendants for intentional infliction of emotional distress and for violations of California's Bane Act. Dkt. No. 1.

Defendants argue that Ms. Bosworth's and Ms. Campbell's state law claims are barred because they failed to file a government claim under the California Government Claims Act. Cal. Gov't Code §§ 911.2, 945.4, and 950.2. This statute requires that a person file a government claim with a public entity before bringing a tort action against it. Cal. Gov't Code § 950.2. "Where two or more persons suffer separate and distinct injuries from the same act or omission, each person must submit a claim, and one cannot rely on a claim presented by another." *Nelson v. County of Los Angeles*, 6 Cal. Rptr. 3d 650, 661 (Cal. App. 2003). If additional claimants are only "mention[ed]" in a "tangential manner," they are not considered to have filed a claim, because "[w]ithout naming the [claimants], the public entity would not be put on notice to investigate the particular defenses it could assert against particular" claimants. *Cosentino v. Kurtz*, 2012 WL 12883842, at \*5 (C.D. Cal. Dec. 11, 2012). "Because this rule is based on the purpose of the claim statutes—which is to provide sufficient information to enable the entity to adequately investigate

claims and to settlement, if appropriate, without the expense of litigation—the statutory requirements have not been met by the person who has not filed a claim, and the doctrine of substantial compliance (which applies only when there is a defect in form but the statutory requirements have otherwise been met) does not apply." *Nelson*, 6 Cal. Rptr. 3d at 661 (internal citations omitted).

Here, the parties do not dispute that Jesse timely filed a government claim. Dkt. No. 71, Ex. 5. In the "name of claimant" field, the claim reads: "Jesse A. Bosworth." *Id*. In the "circumstances" field, Jesse describes his arrest and the dog deployment. *Id*. In the "description of loss" field, Jesse describes the dog bites to his arm and leg as well as his ongoing anxiety, nightmares, and flashbacks to the event. *Id*. Ms. Bosworth and Ms. Campbell are referenced for the first and only time in a section titled "other injured persons," which instructs the claimant to "list names and addresses." *Id*. There, the claim reads: "my mother and grandmother live at the home and were ordered out of the house unlawfully. Also unlawful entry and search." *Id*.

The Court finds that Ms. Bosworth and Ms. Campbell failed to timely file government claims. Their names are not listed anywhere on Jesse's claim, even in the "other injured persons" section that instructs the claimant to include names and addresses. More significantly, no injuries to Ms. Bosworth and Ms. Campbell are described anywhere in Jesse's claim. Instead, the form focuses solely on Jesse's physical and emotional injuries. The government was not put on notice by the content of this form that anyone but Jesse Bosworth would be pursuing a claim. Like in *Cosentino*, where the additional parties were mentioned tangentially in the government claim, here Ms. Bosworth and Ms. Campbell are only tangentially referenced without any description of their individual injuries. WL 12883842, at *5

As such, the defendants' motion for summary judgment as to Ms. Bosworth's and Ms. Campbell's state law claims is hereby GRANTED.

### b. Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress requires a plaintiff to show:

(1) extreme and outrageous conduct by the defendant with the intent of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff actually suffering severe or extreme emotional distress; and (3) actual or proximate causation. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993). Severe or extreme emotional distress "may consist of any highly unpleasant mental reaction such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry." *Fletcher v. Western National Life Ins. Co.*, 10 Cal.App.3d 376, 396 (1970).

Plaintiffs bring claims for intentional infliction of emotional distress against both the individual officer defendants and against the City of San Jose under a theory of *respondeat superior.* Dkt. No. 1 at ¶ 100. Defendants argue that the plaintiffs have not provided sufficient evidence of their severe emotional distress to support their intentional infliction of emotional distress claim.[5] Ms. Bosworth's and Ms. Campbell's IIED claims fail for failure to file a government claim, as discussed above. As to Jesse's IIED claim, the Court FINDS that there is enough evidence to create a genuine dispute of fact as to Jesse's emotional distress. Specifically, Jesse testified that he regularly visits with a counselor and has pursued other mental health services for treatment for the ongoing effects of the incident, including prescription medication such as Prozac. Dkt. No. 74, Ex. DD, at 52:17–53:13. A jury could find that Jesse's emotional distress is severe enough to constitute a claim for IIED. *See, e.g., Hailey v. California Physicians' Service*, 158 Cal. App. 4th 452, 476–77 (2007) (finding that "depression, anxiety, and physical illness" are sufficient as severe emotional distress); *see also Wong v. Jing*, 189 Cal. App. 4th 1354, 1376 (2010) (collecting cases). The defendant's motion for summary judgment as to Ms. Bosworth and Ms. Campbell's IIED claim is GRANTED, and their motion as to Jesse's IIED claim is DENIED.

---

[5] Defendants do not challenge any other element of the IIED claim, such as the outrageousness of their conduct or causation. Nor do defendants challenge the plaintiffs' theory of vicarious liability of the City of San Jose.

### c.  The Bane Act (California Civil Code § 52.1)

To bring a claim under California's Bane Act, the plaintiff must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) that the interference or attempted interference was by threats, intimidation, or coercion. *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015); *see also* Cal Civ. Code § 52.1.  If a plaintiff cannot prove a constitutional violation, then he cannot prove a Bane Act violation. *Pryor v. City and Cty. of San Francisco*, 671 F. App'x 751, 752 (9th Cir. 2017). "A successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1" because "an excessive force claim by its nature includes coercion beyond that inherent, for example, in an arrest or detention or search or seizure." *Chaudry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014); *Barragan v. City of Eureka*, Case No. 15-cv-02070-WHO, 2016 WL 4549130, at *8 (N.D. Cal. Sept. 1, 2016) (collecting cases).  Qualified immunity does not apply to claims under the Bane Act, because qualified immunity is a federal doctrine that does not extend to state tort claims against government employees. *Venegas v. Cnty. of Los Angeles*, 153 Cal. App. 4th 1230, 1244–46 (2007).

Plaintiffs bring their Bane Act claims against both the individual officer defendants and against the City of San Jose under a theory of *respondeat superior*.[6]  Dkt. No. 1 at ¶ 104.  The Court has already dismissed Ms. Bosworth's and Ms. Campbell's state law claims for failure to file a government claim; their Bane Act claim is dismissed for the same reason.  As such, the Court only discusses the Bane Act claim brought by Jesse Bosworth against both the individual officers and the City.

Above, the Court found that questions of fact underly both of Jesse Bosworth's claims for violations of his constitutional rights under § 1983.  The Court denied the defendants' motion for summary judgment as to both the unlawful entry claim and excessive force claim, finding that, viewing the facts in the light most favorable to Jesse

---

[6] Again, Defendants do not challenge the *respondeat superior* theory in their motion for summary judgment.

Bosworth, whether the defendants violated the Constitution was a question for the jury to decide. The same facts that form the basis of the two alleged constitutional violations also form the basis of Jesse Bosworth's Bane Act claim. As above, the Court finds genuine disputes of fact create triable issues for the Bane Act claim. The officers are not entitled to qualified immunity under the Bane Act, and the failed *Monell* theory against the City is not relevant here because Plaintiffs' theory of liability for the City under the Bane Act is one of *respondeat superior*. *Venegas*, 153 Cal. App. 4th at 1244–46; Dkt. No. 1 at ¶ 104.

The defendants' motion for summary judgment as to Ms. Bosworth and Ms. Campbell's Bane Act claim is GRANTED. The defendants' motion for summary judgment as to Jesse Bosworth's Bane Act claim is DENIED.

### 4. Proximate Cause

Given that the Court has granted qualified immunity to the individual officer defendants as to the dog deployment and thus granted the City of San Jose's motion for summary judgment for that conduct, the Court pauses to clarify the impact of this ruling on the damages that may be sought by Jesse Bosworth. Because the warrantless entry claim survives the motions for summary judgment, the Court finds that damages for all injury proximately caused by that entry—including the injuries caused by Jax the dog—may be rightfully pursued by Bosworth.

In *Mendez v. County of Los Angeles*, officers entered the home of Angel and Jennifer Mendez, which was a small one-room structure behind a larger house, without a warrant and without knocking or announcing their presence. 897 F.3d 1067, 1072 (9th Cir. 2018). Startled, Angel Mendez picked up a BB gun sitting near him on his futon to place it onto the floor. *Id.* Believing this to be a threat, the officers quickly opened fire, shooting Angel approximately ten times (leading to the amputation of most of his leg) and shooting Jennifer in the hand and back. *Id.* On remand from the United States Supreme Court, the Ninth Circuit held that, even though the officers were entitled to qualified immunity for their failure to knock and announce, they had violated the Fourth Amendment by entering the residence without a warrant, without consent, and under no exigent circumstances. *Id.*

23

at 1073. The officers were not entitled to qualified immunity for their warrantless entry because "case law had clearly established that the officers' entry was unlawful." *Id.* The Ninth Circuit held that the Mendezes' injuries were proximately caused by the unlawful entry even though it had granted qualified immunity for their failure to knock and announce. *Id.*

Similarly, here, a jury could find that Jesse Bosworth's injuries from Jax were proximately caused by the warrantless entry into the Bosworth home. Even though the officers here are entitled to qualified immunity on their deployment of the dog, Jesse is entitled to seek damages for the injuries proximately caused by the warrantless entry. If the jury determines a Fourth Amendment violation in the warrantless entry, Jesse may recover for those injuries proximately caused. *Id.* at 1074. The jury will determine proximate cause.

### B. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs move for partial summary judgment only as to their claims against Officer Clear. Dkt. No. 72.

#### 1. Unlawful Seizure of Ms. Bosworth and Ms. Campbell

As mentioned previously, the Complaint does not articulate claims under 42 U.S.C. § 1983 on behalf of Ms. Bosworth or Ms. Campbell. The Court has dismissed Ms. Bosworth's and Ms. Campbell's state law claims for failure to file a government claim. Therefore, no claims remain for either Ms. Bosworth or Ms. Campbell and the plaintiffs' motion for summary judgment on their behalf is DENIED.

#### 2. Unlawful Entry

The Court found above that many questions of fact exist as to the officers' warrantless entry into the Bosworth home. For example, a jury will need to determine whether Ms. Bosworth and Ms. Campbell consented to that entry, whether that consent extended to Jesse's room, and whether Officer Clear's reliance on the supposed jail staff phone call was justified. As such, both parties' motions for summary judgment as to the unlawful entry claims are DENIED.

### 3. Police Dog Deployment

The Court found above that the individual officers are entitled to qualified immunity for their deployment of the police dog. Further, the Court found above that the plaintiffs' *Monell* claim against the City of San Jose fails as a matter of law for lack of evidence in the record of any policy, custom, or practice. As such, the plaintiffs' motion for partial summary judgment as to the excessive force of the dog deployment is DENIED.

## IV. CONCLUSION

The defendants' motion for summary judgment is GRANTED as to the plaintiffs' claim for excessive force via police dog deployment against the individual officer defendants based on qualified immunity; the plaintiffs' claims under § 1983 against the City of San Jose for lack of evidence of *Monell* liability; and all claims brought on behalf of Ms. Bosworth and Ms. Campbell for failure to file a government claim. These claims are DISMISSED. Ms. Bosworth and Ms. Campbell are DISMISSED from the case.

The defendants' motion for summary judgment is DENIED as to Jesse Bosworth's claim for excessive force via warrantless entry against the individual officer defendants; intentional infliction of emotional distress as to all defendants; and violations of the Bane Act based on the police dog deployment and the warrantless entry as to all defendants. The plaintiffs' motion for partial summary judgment is DENIED in its entirety.

The following claims remain for trial, all on behalf of Jesse Bosworth:

1. Violation of 42 U.S.C. § 1983 based on the warrantless entry against the individual officer defendants;

2. Violation of the Bane Act based on the police dog deployment and the warrantless entry against the individual officer defendants and the City of San Jose; and

3. Intentional infliction of emotional distress against the individual officer defendants and the City of San Jose.

**IT IS SO ORDERED.**

Dated: January 30, 2020 _____

NATHANAEL M. COUSINS
United States Magistrate Judge